# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **CHARITY COLLEEN CROUSE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:20-CV-00114-X (BH)** |
| | ) | |
| **TEXAS STATE SENATE,** | ) | |
| **Defendant.** | ) | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *pro se* plaintiff's complaint, received on January 16, 2020 (doc. 3), should be **DISMISSED** without prejudice as barred by the Eleventh Amendment or, in the alternative, with prejudice for failure to state a claim and as frivolous.

## I. BACKGROUND

Plaintiff Charity Colleen Crouse sues the Texas State Senate, seeking, among other things, an order compelling a trial to impeach the members of the Texas State Senate "for permitting numerous unconstitutional pieces of legislation to move forward in the State of Texas as well as permitting the implementation of unconstitutional procedures regarding reporting on and in regards to third-party contracting in the State of Texas" and "attempt[ing] to pass off to the People of Texas responsibility for implementation of flagrantly unconstitutional laws under the auspices of 'referenda' on amendments to the Texas Constitution." (Doc. 3 at 2-3.)

Plaintiff appears to allege that, between March 24, 2017 and April 3, 2017, she was kidnapped under the "auspices" of a mental health detention by the State of Texas and declared to be mentally incompetent through a fraudulent mental health diagnosis. (*Id.* at 7.)  She claims that this diagnosis was in retaliation for her attempt to report fraud, child abuse, and other crimes at a

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

domestic violence shelter. (*Id.* at 6.) She also alleges that she was scheduled to appear in court to contest the illegal detention and to submit evidence in support of her original fraud and child abuse charges, but she was not released from confinement until after the courthouse had closed. (*Id.* at 7.)

Around that same time, Plaintiff found out that her grandfather had died in another state. (*Id.*) She appears to contend that his death was intentionally orchestrated by those in the public trust in Texas. (*Id.*) She also claims that due to the refusal of anyone in an official capacity to assist her in challenging the illegal detention and mental health diagnosis, the "vestiture of benefits...tangible and intangible," relating to her grandfather's estate has been impacted. (*Id.*)  Instead of helping her, people in the public trust within the State of Texas allegedly "aided and abetted a conspiracy to commit fraud and child abuse, as well as other crimes." (*Id.*)

Plaintiff claims that while living in Houston in May 2017, after contacting members of the Texas Medical Board and State Bar of Texas, she contacted local members of the Texas Senate and House of Representatives. (*Id.* at 3.) She again contacted members of the Texas Senate and House of Representatives on August 2, 2017. (*Id.*) She received no response and instead was "witness to abuses of the Texas Constitution," including efforts to implement unconstitutional amendments to the Texas Constitution. (*Id.*) However, at no point did members of the Texas Senate call for impeachment of any other officer in the state government for their failure to challenge these unconstitutional laws or otherwise protect the people of Texas from their consequences. (*Id.*) This failure, according to Plaintiff, represents a breach of the contract between the citizens of Texas and their government that is the Texas Constitution. (*Id.*)

Plaintiff also claims that in September 2017, following a declaration of a State of Emergency in the State of Texas, numerous legislative changes were implemented under fraudulent pretenses

and done in a manner that "aided and abetted the murders of numerous Texas citizens, including members of law enforcement." (*Id.* at 8.) These facts—and an attendant cover up, which include efforts to defraud the People of Texas of their personal private property and access to due process—constitute a "levying of war" upon the "State" under the Texas Constitution. (*Id.*) She takes particular issue with legislation taking effect on January 20, 2020, "giving the Attorney General of Texas special exception to negotiate terms with third-party contractors." (*Id.* at 4.) She claims that this legislation was implemented after "more than three years of [Plaintiff] actively reporting to public government agencies in the State of Texas, including the Texas Insurance Commission" (*Id.* at 9.)[1] But rather than help her, these agents "defaulted on their sureties" and refused to honor reporting timelines while Plaintiff's property was expropriated in violation of Article 1, Section 17(d) of the Texas Constitution, which generally provides that private property may not be taken for public use without just compensation. (*Id.*) This legislation allegedly increased access by third-party contractors to the property of the People of Texas and Texas citizens and also further prevented the People of Texas and Texas citizens from exercising their constitutional rights to due process. (*Id.* at 10.)

Plaintiff claims that the timeline of the implementation of these laws shows that the acting representatives of the government of Texas intended to defraud her of her personal private property, making it available for illegal redistribution with others with whom they had engaged "via contract in violation of their duty to uphold the Bill of Rights of the Texas Constitution in exercise of their ministerial duties." (*Id.*)

---

[2]Plaintiff contends that she twice requested—via the Supreme Court of Texas—a manner in which to submit evidence (for what reason is unclear) but was denied both times in violation of her Constitutional right per Article 1, Section 5 of the Texas Constitution, which generally states that witnesses will not be disqualified from giving evidence on account of their religious beliefs. (*Id.* at 10.)

Although the precise nature of the relief Plaintiff seeks is unclear, she does ask for the following forms of injunctive relief: (1) a "reform in the manner of impeachment of the current members of the Texas State Senate for refusal to honor their contract with the People of Texas and a move to call immediately for new elections to commence in the State of Texas"; (2) an injunction on all laws, specifically those concerning third-party contractors, set to take effect on January 1, 2020, pending a review of their constitutionality; (3) an injunction on the implementation of all "Constitutional Amendments" concerning additional tax law changes in the State of Texas set to take effect on January 1, 2020; and (4) a further injunction against the continued implementation of "SB 151 and HB 2763 of 2019 and SB 4 and SB 15 of 2017" pending a review of their constitutionality. (*Id.* at 5.) No process has been issued in this case.

## II. PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis*, her complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted." A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curium). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007).

### III. SECTION 1983

Although not totally clear, to the extent Plaintiff is alleging that the Texas State Senate, under the color of state law, violated her rights secured by the Constitution or laws of the United States, her claims arise under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.    <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055,

2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims). However, "[s]uits for injunctive or declaratory relief are allowed against a state official acting in violation of federal law if there is a "sufficient 'connection' to enforcing an allegedly unconstitutional law." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)).

Further, although Congress has the power to abrogate immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curium).

### 1.    State Law Claims

Here, Plaintiff is suing the Texas Senate, which is an arm of the state entitled to Eleventh Amendment immunity, unless an exception applies. *See Larsen v. Senate of the Com. of Pa.*, 955 F.Supp. 1549, 1561 (M.D. Penn. 1997), *overruled in part on other grounds*, 154 F.3d 82 (3rd Cir. 1998) ("The court finds that the Senate is entitled to Eleventh Amendment immunity. It is difficult to imagine what entity would be considered an arm of the Commonwealth if the Senate were not."); *see also Rivera-Concepcion v. Puerto Rico*, 786 F.Supp.2d 442, 451 (D. Puerto Rico, 2010) ("The court agrees with defendants [] that the Senate and House enjoy Eleventh Amendment immunity as 'an organic part of the central government of Puerto Rico.'") (citation omitted).

6

Construing her Complaint liberally, Plaintiff arguably asserts a number of claims for violations of the Texas Constitution.  She seems to argue that (1) the Texas Senate violated the Texas Constitution by not holding impeachment proceedings against the Texas Governor, the Texas Attorney General, and various state judges; (2) the Texas Senate passed, or allowed to be passed, legislation that violates the Texas Constitution, such as legislation giving the Texas Attorney General the ability to negotiate terms with third-party contractors, "constitutional amendments" concerning additional tax law changes, and SB 151 and HB 2763 of 2019 and SB 4 and SB 15 of 2017; (3) the Texas Senate failed to uphold its contract with the citizens of Texas to uphold the State Constitution; (4) unspecified state actors illegally kidnapped her under the "auspices of a mental health detention" in retaliation for her "attempting to report on fraud and child abuse;" (5) unspecified state actors "aid[ed] and abett[ed] a conspiracy to commit fraud and child abuse" and refused to retract Plaintiff's mental health diagnosis; (6) unspecified state actors committed treason against the State of Texas; (7) unspecified state actors "levy[ed] war" against the State in violation of Article 1, Section 2 of the Texas Constitution; (8) unspecified state actors took Plaintiff's private property for public use without providing her adequate compensation in violation of Article 1, Section 17 of the Texas Constitution; and (9) unspecified state actors denied her constitutional right under Article 1, section 5 of the Texas Constitution to present evidence because of her religious beliefs. *See generally* (Doc. 1.)

Sovereign immunity bars "federal courts from hearing state law claims brought in federal court against state entities." *Raj*, 714 F.3d at 329 (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). Because The Texas Senate is a state entity for Eleventh Amendment purposes,  Plaintiff's claims, to the extent premised upon the Texas State Constitution

or other state law, must be dismissed.  *See, e.g., Boquist v. Oregon State Senate*, 432 F.Supp.3d 1221, 1227 (D. Or. 2020) (finding that Eleventh Amendment barred claims against state senators for alleged violations of the Oregon Constitution); *Belt v. Ind. Parole Dep't*, 241 F.Supp.2d 905, 907 (N.D. Ind. 2003) (holding that the Eleventh Amendment precluded the court from interpreting Indiana's constitution and requiring state officials to conform their conduct); *Cornwell v. Joseph*, 7 F.Supp.2d 1106, 1108 (S.D. Cal. 1998) (citation omitted) (holding that the Eleventh Amendment precluded "federal supplemental jurisdiction over state law claims against state officers sued in their official capacities").

### 2.    Federal Law Claims

The Eleventh Amendment also bars any federal law claims—to the extent asserted— unless an exception applies. *See Raj*, 714 F.3d at 328-29 (noting that sovereign immunity bars both federal and state law claims brought in federal court).  Plaintiff fails to plead sufficient facts to show that any Eleventh Amendment exception applies here. The State has not waived its immunity by consenting to suit, nor has Congress abrogated Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71.

Nor can Plaintiff avail herself of the *Ex Parte Young* exception to sovereign immunity. Plaintiff has not sued any state officials in their official capacity; she has instead sued the Texas Senate. The *Ex Parte Young* exception has "no application in suits against the States and their agencies, which are barred regardless of the relief sought..." *P.R. Aqueduct and Sewer Authority*, 506 U.S. at 146 (citing *Cory v. White*, 457 U.S. 85, 90-91 (1982)); *see also City of Austin v. Paxton*, 943 F.3d 993, 1004 (5th Cir. 2019) (finding the *Ex Parte Young* exception inapplicable where the plaintiff sued the "Texas Workforce Commission" and not any individual commissioners).

Even if Plaintiff had sued individual Texas state senators in their official capacities for prospective relief, she has failed to plead facts sufficient to show that the *Ex Parte Young* exception applies; she does not explain how Texas state senators have any connection to the enforcement of state law or that they are specifically charged with a duty to enforce that law and are threatening to exercise it. *See Hall v. Louisiana*, 974 F.Supp.2d 944 (E.D. La. 2013) (finding that a plaintiff's federal law claims against the Louisiana House of Representatives and Senate for their enactment of a judicial election did not fit within the *Ex Parte Young* exception when the plaintiff failed to allege that the Legislature had some connection with the enforcement of the plan or that they were specifically charged with the duty to enforce the plan and were threatening to exercise that duty).

The Eleventh Amendment bars Plaintiff's state law claims—and, to the extent asserted—federal law claims against Texas State Senate, and these claims should be dismissed without prejudice.

**B.    Failure to State a Claim**

Alternatively, Plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Initially, she appears to contest the constitutionality of certain laws concerning third-party contractors, tax law changes, and the implementation of SB 151 and HB 2763 of 2019 and SB 4 and SB 15 of 2017, and asks for an injunction on such laws.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreperable harm in the absence of preliminary relief;

(3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citation omitted). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009).

Here, Plaintiff does not provide sufficient facts for the Court to infer a likelihood of irreparable harm or success on the merits. She does not elaborate on what "tax law changes" she contests, how these "tax law changes" will impact her in the future, or provide facts from which it may be determined that she has shown a likelihood of success on the merits regarding a challenge to these laws. The same is true for the implementation of SB 151 and HB 2763 of 2019 and SB 4 and SB 15 of 2017. As for an injunction regarding laws concerning third-party contractors, she also fails to plead sufficient facts to show prospective relief is appropriate. She does not claim any imminent injury resulting from laws concerning "third-party contractors" or provide facts showing a likelihood of success on the merits. Likewise, Plaintiff fails to show a likelihood of success on the merits as to her request for order for an impeachment trial of the Texas Senate.

As for past events, Plaintiff claims that she was illegally kidnapped and declared to be mentally incompetent by unidentified state actors in retaliation for attempting to report on fraud, child abuse, and other crimes. (Doc. 3 at 7.) These vague and conclusory allegations are simply insufficient to state a claim. "The probable cause standard applies in the context of a seizure of the mentally ill." *Cantrell v. City of Murphy*, 666 F.3d 911, 923 n.8 (5th Cir. 2012). A mental health seizure without a warrant is appropriate if (1) an officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the

person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody." *Id.* at 923 (citing TEX. HEALTH & SAFETY CODE ANN. § 573.001). Plaintiff's sparse factual allegations do not support a finding of a cognizable claim for an illegal mental health seizure—to the extent she is making such a claim. She does not allege the circumstances leading up to the confinement, whether a warrant was obtained, and, if not, whether the state actor had reason to believe, and did believe, that she was mentally ill, and that there existed a substantial risk of serious harm to her or to others absent restraint.

The result is the same to the extent that Plaintiff claims she was falsely imprisoned under state law. To establish the intentional torts of false arrest or false imprisonment, the plaintiff must show (1) willful detention, (2) without consent, and (3) without authority of law. *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir. 1989), *cert. denied*, 491 U.S. 907 (1989) (citation omitted). A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another. *Ameen v. Meck & Co., Inc.*, 226 F.App'x 363, 374 (5th Cir. 2007) (citing *Randalls Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995)). Plaintiff fails to make any non-conclusory allegations sufficient to show that she was imprisoned or arrested without authority of law. To the extent alleged, her state law false imprisonment claim must be dismissed.

Plaintiff also arguably claims that her confinement was in retaliation for attempting to report on fraud, child abuse, and other crimes. (Doc. 3 at 6.) These allegations could be liberally construed as asserting a First Amendment retaliation claim under § 1983. To state a First Amendment retaliation claim under § 1983, a plaintiff must allege facts to show that (1) she was engaged in a

11

constitutionally protected activity; (2) the defendant's conduct caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse actions were substantially motivated by her constitutionally protected activities. *Keenan v. Tejada*, 290 F.3d 252, 257 (5th Cir. 2002). Plaintiff only conclusorily alleges that she was confined because she attempted to report other crimes, which is insufficient to state a First Amendment retaliation claim, to the extent asserted. *See Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (noting that courts do not accept "conclusory allegations, unwarranted deductions, or legal conclusions" at the motion to dismiss stage).

Plaintiff also appears to allege a takings claim. She claims that her property was taken "by those in the public trust" in violation of Article 1, Section 17(d) of the Texas Constitution. (Doc. 3 at 9.) She simply fails to plead sufficient facts to state a violation of federal law related to the taking of private property, however. "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Chicago, B & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), directs that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998). Before asserting a takings claim, however, a plaintiff must establish that the claim is ripe by demonstrating that the property was (1)"taken," and (2) that they have been denied just compensation. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985). A violation of the Fifth Amendment's Taking clause does not occur until the plaintiff has been denied just compensation through state procedures. *See Johns Corp. v. City of Houston*, 214 F.3d 573, 581 (5th Cir. 2000). Further, to state a takings claim, the plaintiff must have a property interest in the subject property. "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent

12

source such as state law." *Phillips*, 524 U.S. 156 at 164.  Here, because Plaintiff does not identify

the property at issue, she has not plead enough to show she has a compensable interest in it. Any

takings claim must be dismissed.

Plaintiff also sporadically references due process; however, it is unclear whether she attempts

to assert a due process claim, whether substantive or procedural. To state a procedural due process

claim, the plaintiff must show that a state actor (1) deprived him (2) of life, liberty, or property (3)

without due process of law. *See generally Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).

Plaintiff fails to allege any of those elements. Substantive due process "protects individual liberty

against certain government actions regardless of the fairness of the procedures used to implement

them." *910 E Main LLC v. Edwards*, —F.Supp.3d—,  2020 WL 4929256, at *7 (W.D. La. Aug. 21,

2020). The substantive component of the Due Process Clause "provides heightened protection

against government interference with certain fundamental rights and liberty interests," which are

held to a more exacting standard of strict scrutiny. *Collins v. City of Harker Heights*, 503 U.S. 115,

125 (1992).  Plaintiff fails to identify any fundamental right of liberty interest at issue, so her

substantive due process claim is likewise meritless.

Plaintiff also continually references fraudulent behavior by the State, including aiding and

abetting a conspiracy to commit fraud and child abuse, defrauding her and the citizens of Texas of

private property and access to due process, and fraudulently enacting laws. (See Doc. 3 at 7, 8, 9,

10). The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be

fraudulent, identify the speaker, state when and where the statements were made, and explain how

the statements were fraudulent." *Hermann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-

65 (5th Cir. 2002) (internal quotations and citations omitted).  Her conclusory allegations here fail

to meet that standard, so any fraud claim should be dismissed.

Finally, as discussed, Plaintiff references multiple violations of the Texas Constitution, arguing, apparently, that the Texas State Senate committed treason against the State of Texas, "lev[ied] war" on the State of Texas, failed to honor the "contract" with the people of Texas, and further violated the state constitution by twice prohibiting her from submitting evidence in a state court because of her religious beliefs. *See* (Doc. 3 at 4, 7, 8, 10). To the extent Plaintiff seeks money damages for supposed violations of the Texas Constitution, her claims are unavailing because "tort damages not recoverable for violations of the Texas Constitution." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001). She also fails to plead any facts concerning future violations of these provisions that would require analysis of her entitlement to injunctive relief. She fails to plead facts sufficient to state a cognizable claim for relief.

## C.    **Frivolity**

As demonstrated, Plaintiff's claims are both factually and legally frivolous. Her claims are based upon an indisputably meritless legal theories. She "does not present a logical set of facts to support any claim for relief," instead reciting "fantastic charges which are fanciful and delusional in nature." *Melton v. American Civil Liberties Union*, No. 3-07-CV-0856, 2007 WL 2263953, at *1 (N.D. Tex. July 30, 2007) (finding claims that the ACLU was "seeking to impose minority rule though the courts, attacking the Boy Scouts of America, defending child molesters, and promoting legislation to have private property rights revoked" were frivolous and warranted dismissal under § 1915(e)(2)). Her claims may be dismissed on the basis of frivolity as well. *See Neitzke*, 490 U.S. at 327-28 (1989); *Kolocontronis v. Club of Rome*, 109 F.3d 767 (5th Cir. 1997) (affirming dismissal of a complaint describing a government plot to spread the AIDS virus throughout the world);

*Simmons*, 170 F. App'x at 907-08.

Finally, although a plaintiff should ordinarily given a chance to amend a complaint before dismissal, here, because the Eleventh Amendment clearly bars Plaintiff's claims against the Texas Senate, and given the frivolity of the allegations, leave to amend would be futile and need not be extended. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### IV. RECOMMENDATION

Plaintiff's complaint should be **DISMISSED** without prejudice as barred by the Eleventh Amendment, or in the alternative, with prejudice for failure to state a claim and as frivolous.

**SO RECOMMENDED** on this 15th day of March, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE